MARY E. ALEXANDER, ESQ. (SBN: 104173)
Mary Alexander & Associates, P.C.
44 Montgomery Street, Suite 1303
San Francisco, California 94104
Telephone: (415) 433-4440
Facsimile: (415) 433-5440
Email: malexander@maryalexanderlaw.com

ELIZABETH J. CABRASER (SBN: 083151)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: ecabraser@lchb.com

GRETCHEN NELSON (SBN: 112566)
Nelson & Fraenkel LLP
601 So. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019
Email: gnelson@nflawfirm.com

*Attorneys for Plaintiffs*
[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DUC CHUNG, BERNETTA EVERETT, DWIGHT EVERETT, DEBRA LEONELLI, DAVID REGE, CONNIE SIMMONS, JAMES SIMMONS, and MICHAEL SIMMONS on behalf of themselves and all others similarly situated,

        Plaintiffs,

    vs.

CARNIVAL CORPORATION; CARNIVAL PLC and PRINCESS CRUISE LINES LTD.,

        Defendants.

Case No.: 2:20-cv-04954

**CLASS ACTION COMPLAINT FOR DAMAGES**

1. NEGLIGENCE
2. GROSS NEGLIGENCE
3. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**DEMAND FOR JURY TRIAL**

## COMPLAINT AND JURY DEMAND

Individual and representative Plaintiffs DUC CHUNG, BERNETTA EVERETT, DWIGHT EVERETT, CONNIE SIMMONS, JAMES SIMMONS, and MICHAEL SIMMONS, bring this action for themselves and on behalf of all persons similarly situated, including Individual Plaintiffs DEBRA LEONELLI and DAVID REGE, and the more than 2000 other passengers who sailed on the roundtrip Motor Vessel ("M/V") GRAND PRINCESS cruise from San Francisco, California on February 11, 2020, to Mexico, against Defendants, PRINCESS CRUISE LINES LTD. ("PRINCESS"), its parent companies CARNIVAL CORPORATION & CARNIVAL PLC (collectively, "CARNIVAL") and allege:

## THE PARTIES

1.      Individual and representative Plaintiff Duc Chung is *sui juris*, and is a resident of Fresno County, California and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

2.      Individual and representative Plaintiff Bernetta Everett is *sui juris*, and is a resident of Ventura County, California and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

3.      Individual and representative Plaintiff Dwight Everett is *sui juris*, and is a resident of Ventura County, California and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

4.      Individual and representative Plaintiff Connie Simmons is *sui juris*, and is a resident of San Joaquin County, California and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

5.      Individual and representative Plaintiff James Simmons is *sui juris*, and is a resident of Fresno County, California and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

CLASS ACTION COMPLAINT FOR DAMAGES

1    6.    Individual and representative Plaintiff Michael Simmons is *sui juris*,
2  and is a resident of San Joaquin County, California and was a passenger onboard
3  the Grand Princess cruise from February 11, 2020, to disembarkation on February
4  21, 2020.

5    7.    Individual Plaintiff Debra Leonelli is *sui juris*, and is a resident of San
6  Francisco County, California and was a passenger onboard the Grand Princess
7  cruise from February 11, 2020 through her disembarkation on or about March 10,
8  2020.

9    8.    Individual Plaintiff David Rege is *sui juris*, and is a resident of San
10  Francisco County, California and was a passenger onboard the Grand Princess
11  cruise from February 11, 2020 through his disembarkation on or about March 10,
12  2020.

13    9.    Defendant CARNIVAL CORPORATION was incorporated in 1972 in
14  Panama and has its headquarters in Miami, Florida.

15    10.    Defendant CARNIVAL PLC was incorporated in 2000, in Wales,
16  United Kingdom. It also has its headquarters in Miami, Florida.

17    11.    Upon information and belief, Defendant PRINCESS CRUISE LINES
18  LTD. is incorporated in Bermuda, with its headquarters in Santa Clarita, California.

19    12.    Upon information and belief, at all times hereto, CARNIVAL
20  CORPORATION, CARNIVAL PLC, and PRINCESS advertised, marketed, sold,
21  and profited (directly or indirectly) from and owned, controlled, and operated the
22  cruise ship, M/V GRAND PRINCESS.

23    **ALTER EGO/PIERCING CORPORATE VEIL**

24    13.    Defendants CARNIVAL CORPORATION, CARNIVAL PLC, AND
25  PRINCESS are alter egos and/or agents of each other such that the corporate form
26  should be disregarded.

27    14.    CARNIVAL CORPORATION and CARNIVAL PLC operate as a
28  single economic enterprise. They share a senior executive management team and

CLASS ACTION COMPLAINT FOR DAMAGES

1   identical Boards of Directors. Both CARNIVAL CORPORATION and
2   CARNIVAL PLC share a single headquarters in Miami, Florida.

3        15.    As described by CARNIVAL CORPORATION in a filing with the
4   Securities and Exchange Commission ("SEC"), "Carnival Corporation and Carnival
5   plc operate a dual listed company ('DLC'), whereby the businesses of Carnival
6   Corporation and Carnival plc are combined through a number of contracts and
7   through provisions in Carnival Corporation's Articles of Incorporation and By-
8   Laws and Carnival plc's Articles of Association."

9        16.    Plaintiffs bring this lawsuit against CARNIVAL CORPORATION and
10  CARNIVAL PLC individually, but because the entities work as alter-egos and/or
11  agents of one another, Plaintiff refers to them collectively throughout this
12  Complaint as "CARNIVAL."

13       17.    In a federal criminal plea agreement signed by CARNIVAL in 2016,
14  CARNIVAL described PRINCESS as one of several "operating lines" that together
15  comprise the "Carnival Group" of companies. CARNIVAL stated that Princess and
16  the other cruise ship operating lines are semi- autonomous entities within the
17  Carnival Corporation and Carnival plc (formerly P&O Princess Cruises plc)
18  corporate umbrella.

19       18.    In that 2016 federal criminal plea agreement, CARNIVAL stated that
20  it "currently monitors and supervises environmental, safety, security, and regulatory
21  requirements for Princess and other Carnival brands. Carnival Corporation & plc
22  operate a total of 101 ships visiting 700 ports around the world, including most
23  major ports in the United States."

24       19.    CARNIVAL has ownership and control over PRINCESS, which is
25  organized under Holland America Group within CARNIVAL. CARNIVAL has
26  claimed in filings with the SEC that it wholly owns PRINCESS as a subsidiary.

27       20.    CARNIVAL and PRINCESS share the same Board of Directors and
28  almost all of the same executive officers, and appear to use the same assets.

CLASS ACTION COMPLAINT FOR DAMAGES

1    21.    CARNIVAL exerts control and domination over PRINCESS's

2  business and day-to-day operations.

3                          **JURISDICTION**

4    22.    This Court has Admiralty subject matter jurisdiction pursuant to 28

5  U.S.C. § 1333, as this case involves a maritime tort. The type of incident and

6  injuries suffered by Plaintiffs and the class had the potential to impact maritime

7  commerce as Plaintiffs and the class suffered harm and Plaintiffs and the class were

8  and continue to be at serious risk of imminent harm as a result of exposure to

9  COVID-19 aboard the cruise ship upon which they were paying passengers.

10    23.    This Court also has subject matter jurisdiction pursuant to the Class

11  Action Fairness Act, codified at 28 USC §1332(d)(2)(A) and (C), because the

12  claims of the proposed Class Members exceed $5,000,000 and because at least one

13  member of the Proposed Class of plaintiffs is a citizen of a state different from at

14  least one Defendant.

15    24.    This Court has personal jurisdiction over Defendants, who each

16  conduct substantial business in this district.

17    25.    Defendant PRINCESS has its headquarters in Santa Clarita, California.

18    26.    Upon information and belief, CARNIVAL, including by and through

19  its subsidiary, PRINCESS, markets cruise vacations to California residents and

20  employs thousands of California residents to work at its California headquarters.

21  The Court has personal jurisdiction over CARNIVAL because CARNIVAL is

22  authorized to do business in California, conducts substantial business in California,

23  and some of the actions giving rise to this Complaint took place in California.

24    27.    The claims asserted herein arise from Defendants' contacts with

25  California.

26    28.    Additionally, each of the Defendants purports to be a party to the

27  Passage Contract, which purports to name the Central District as proper venue to

28  actions against Defendants. Although Plaintiffs do not concede the enforceability of

CLASS ACTION COMPLAINT FOR DAMAGES

the Passage Contract, by naming this District as a proper venue, Defendants have consented to personal jurisdiction in this District.

29.    Each of the facts pleaded herein independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

## **VENUE**

30.    Venue in the Central District of California is proper under 28 U.S.C. § 1391 because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

31.    Additionally, without conceding the enforceability of the Passage Contract, Plaintiffs acknowledge the inclusion in the Passage Contract of a venue selection provision designating the United States District Court for the Central District of California in Los Angeles as a proper venue for this action.

## **FACTUAL BACKGROUND**

32.    In December 2019, a new strain of Coronavirus known as COVID-19 or SARS-CoV-2 was first observed in humans in China. The virus quickly spread through China and Asia and has caused a global pandemic. Infection with COVID-19 is generally associated with symptoms such as fever, a dry cough, shortness of breath, infection, pneumonia, and it can be fatal.

33.    In addition to the cold- and flu-like symptoms COVID-19 patients typically experience, the virus has been linked to loss of taste and smell, blood clots, severe strokes, heart inflammation, acute kidney disease, intestinal damage, liver damage, and neurological problems.[1] Clinicians and public health experts continue to learn more about the virus, its effects on the human body, and the

---

[1] Lenny Bernstein, Carolyn Y. Johnson, Sarah Kaplan and Laurie McGinley. Coronavirus destroys lungs. But doctors are finding its damage in kidneys, hearts, and elsewhere. The Washington Post. April 15, 2020. https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/2020/04/14/7ff71ee0-7db1-11ea-a3ee-13e1ae0a3571_story.html (last visited April 29, 2020).

CLASS ACTION COMPLAINT FOR DAMAGES

1  residual impact on the health of those who have been exposed to or infected with
2  COVID-19.

3       34.     As of the filing of this complaint, there have been over 1.8 million
4  cases and over 106,000 deaths in the United States as a result of COVID-19. Over
5  2,600 cases and, as of this filing, 43 deaths have been reported in San Francisco, at
6  least three of which were due to infections contracted while onboard the M/V
7  GRAND PRINCESS—a ship owned and operated by Defendants.

8       35.     On January 30, 2020, the World Health Organization declared
9  COVID-19 a global health emergency.

10      36.     In early February 2020, experts in the European Union, led by
11  epidemiologist Dr. Christou Hadjichristodoulou, released guidelines for the cruise
12  industry that included an outline of the risk of COVID-19 outbreaks aboard cruise
13  ships and recommended response protocols.[2] Specifically, the guidelines directed
14  that, in the event of a COVID-19 case, close contacts of the case should be
15  quarantined in their cabin or on shore, and "casual contacts" should be
16  disembarked.[3]

17      37.     Defendants CARNIVAL and PRINCESS represent that they have a
18  commitment to "the health, safety, and security" of their passengers and promote
19  their business as one that "always strives to be free of injuries, illness and loss."[4]

---

[2] Interim Advice for Preparedness and Response to Cases of Acute Respiratory
Disease at Points of Entry in the European Union (EU) / EEA Member States (MS):
Advice for ship operators for preparednessand response to the outbreak of 2019-
nCoV acute respiratory disease, Feb. 3, 2020,
https://www.gac.com/491364/siteassets/about-gac/coronavirus/eu-interim-
advice_2019-ncov_maritime_4_2_2020_f.pdf (last visited April 6, 2020); *see also*
Matt Apuzzo, Motoko Rich and David Yaffe-Bellany, *Failures on Diamond
PrincessShadow Another Cruise Ship Outbreak*, The New York Times, March 8,
2020, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-
ship.html (last visited April 6, 2020).
[3] Healthy GateWays, Algorithm for decision making in response to an event of a
suspect case of COVID-19,
https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last
visited April 6, 2020).
[4] Carnival Health, Environment, Safety, Security & Sustainability Policy &

CLASS ACTION COMPLAINT FOR DAMAGES

They further assert that they "[s]upport a proactive framework of risk mitigation in the areas of HESS [Health, Environment, Safety, Security] aimed at preventing, monitoring and responding to threats."[5]

38.     However, in or before early February 2020, Defendants became aware of an outbreak of COVID-19 aboard the cruise ship the DIAMOND PRINCESS, which is operated by CARNIVAL and PRINCESS. The outbreak originated on the DIAMOND PRINCESS while the vessel was docked in Yokohama, Japan. Ten cases were originally diagnosed, and that number rapidly escalated to over 700 cases—over one-fifth of the passengers onboard. Investigative reporting about the Diamond Princess alleges that well after CARNIVAL and PRINCESS became aware of the first case aboard the ship, Defendants worked to "keep the fun going" by "encouraging [guests] to mingle."[6]

39.     To date, 14 of the DIAMOND PRINCESS' passengers have died as a result of COVID-19,[7] and cruises run by CARNIVAL have been identified as responsible for more than 1,500 positive COVID-19 infections, and almost 40 deaths.

40.     On February 11, 2020—approximately ten days after Defendants learned about the infection aboard the DIAMOND PRINCESS—Defendants boarded Plaintiffs and over 2,000 other passengers onto the M/V GRAND

Governance, Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, https://www.carnivalcorp.com/leading-responsibly/health-environment-safety-security-sustainability-policy-governance/ (last visited April 7, 2020).

[5] Carnival Corporation & PLC Health, Environmental, Safety, Security, and Sustainability Corporate Policy, https://www.carnivalcorp.com/static-files/0b8327aa-c3be-4022-a1a5-a6dad7123af7 (last visited April 7, 2020).

[6] Austin Carr and Chris Palmieri, *Socially Distance This: Carnival Executives Knew They Had a Virus Problem, But Kept the Party Going*, Bloomberg, April 16, 2020,  https://www.bloomberg.com/features/2020-carnival-cruise-coronavirus/ (last visited April 20, 2020).

[7] Lauren Smiley, *27 Days in Tokyo Bay: What Happened on the Diamond Princess*, Wired, May 13, 2020, https://www.wired.com/story/diamond-princess-coronavirus-covid-19-tokyo-bay/.

- 8 -

CLASS ACTION COMPLAINT FOR DAMAGES

PRINCESS for a roundtrip voyage to Mexico without conducting any effective medical screenings for passengers and without providing any additional information about best practices to mitigate or prevent the spread of COVID-19.

41.     Upon information and belief, throughout the course of the 10-day voyage to Mexico, Defendants did not alter their on-ship protocols, event itineraries, or cleaning and disinfectant practices in order to prevent the spread of COVID-19. Defendants did not, for example, institute any medical examination or screening procedures for passengers leaving and returning to the ship at any of the M/V GRAND PRINCESS's ports of call. Nor did Defendants provide passengers onboard the M/V GRAND PRINCESS any information about COVID-19.

42.     On or around February 19, 2020, Defendants became aware of at least one passenger suffering from COVID-19 symptoms onboard the M/V GRAND PRINCESS, but they did not alert Plaintiffs or other passengers aboard the ship, and did not put into place any quarantine requirements or shelter-in-place and social distancing protocols.

43.     According to CARNIVAL's Chief Medical Officer, Grant Tarling, MD, MPH, Defendants believed the infected passenger was carrying the virus when he boarded the M/V GRAND PRINCESS on February 11, 2020, but because Defendants did not provide any screening for passengers, they were unaware of his condition.[8]

44.     Dr. Tarling reported that the infected passenger sought medical treatment from the medical center onboard the M/V GRAND PRINCESS on February 20, 2020. The passenger reported suffering from "acute respiratory distress" for about a week before seeking treatment. Dr. Tarling did not say whether the passenger had sought any medical help prior to February 20, 2020. Upon

---

[8] Thomas Fuller, John Eligon, and Jenny Gross, *Cruise Ship, Floating Symbol of America's Fear of Coronavirus, Docks in Oakland*, The New York Times, March 9, 2020, https://www.nytimes.com/2020/03/09/us/coronavirus-cruise-ship-oakland-grand-princess.html (last visited April 7, 2020).

CLASS ACTION COMPLAINT FOR DAMAGES

1    information and belief, this information would have triggered mandatory reporting

2    under 42 CFR 71.1 *et seq.* and constitutes a "hazardous condition" per 33 CFR §

3    160.216.[9]

4           45.    While onboard the M/V GRAND PRINCESS, Plaintiff Connie

5    Simmons became extremely ill and suffered from a fever. The cabin steward visited

6    her room and refused to enter. Following this visit, on the seventh day of the cruise,

7    a cruise ship staff member came to her room in full hazmat gear. A physician never

8    visited her. Instead medical personnel aboard the ship repeatedly told her that she

9    would have to visit medical facilities onboard, even though she was unable to walk

10   that far. After disembarking from the trip on February 21, 2020, Connie Simmons

11   suffered coughing, shortness of breath, blood clots in her right lung, and various

12   other ailments forcing her to take over five weeks off of work.

13          46.    Plaintiff Dwight Everett also became ill while onboard. On or around

14   February 15, Mr. Everett lost his appetite and suffered from other symptoms

15   consistent with COVID-19. He chose to self-isolate in his cabin. After

16   disembarking from the cruise and returning to his home, Mr. Everett tested positive

17   for COVID-19.

18          47.    Upon information and belief, at least three other passengers on the

19   M/V GRAND PRINCESS's Mexico trip suffered from COVID-19 symptoms while

20   on the vessel, exposing other passengers, including Plaintiffs, and crew members

21   onboard the ship to the virus. At least 100 passengers who traveled on board the

22   M/V GRAND PRINCESS have tested positive for COVID-19, and at least two

23   passengers who traveled on the M/V GRAND PRINCESS's Mexico trip died after

24   _____

25   [9] Section 160.216 requires that "[w]henever there is a hazardous condition … on
     board a vessel or caused by a vessel or its operation, the owner, agent, master,
26   operator, or person in charge must immediately notify the nearest Coast Guard
     Sector Office . . . ." A"[h]azardous condition means any condition that may
27   adversely affect the safety of any vessel … or the environmental quality of any port,
     harbor, or navigable waterway of the United States. It may, but need not,
28   involve … injury *or illness of a person aboard* … ." 33 CFR § 160.202 (emphasis
     added).

CLASS ACTION COMPLAINT FOR DAMAGES

1   disembarking.[10] One of these fatalities was the first-reported death caused by

2   COVID-19 in California.[11]

3       48.    On February 21, 2020, the M/V GRAND PRINCESS arrived at port in

4   San Francisco and most of the passengers from the Mexico trip disembarked,

5   though some remained onboard to travel on the ship's subsequent voyage headed to

6   Hawaii.

7       49.    Plaintiff Duc Chung became ill the day after disembarking from the

8   M/V GRAND PRINCESS. He suffered from a cough, sore throat, irritated eyes,

9   and other symptoms. He reported himself to the public health department, and self-

10  quarantined for five days, during which he was off of work.

11      50.    Additionally, in the days following his trip on the M/V GRAND

12  PRINCESS, Plaintiff James Simmons suffered from a sore throat, cough, a fever

13  and chills. He was forced to miss eight days of work, five of which were due to his

14  having to self-quarantine.

15      51.    On February 25, 2020, CARNIVAL and PRINCESS emailed Plaintiffs

16  and their fellow passengers that had traveled on the M/V GRAND PRINCESS's

17  trip to Mexico alerting them that some of their fellow passengers had suffered from

18  COVID-19 and that they may have been exposed to COVID-19.

19

20  _____

21  [10] Mark Berman, *Two Grand Princess passengers die from coronavirus, officials say*, The Washington Post, March 25, 2020,
22  https://www.washingtonpost.com/nation/2020/03/25/two-grand-princess-passengers-died-coronavirus-officials-say/ (last visited May 19, 2020).

23  [11] It has since been discovered that other Californians suffered from and died as a
24  result of COVID-19 prior to the February 11, 2020 cruise aboard the M/V GRAND PRINCESS. Nevertheless, the death of a Placer County resident who traveled on
25  the M/V GRAND PRINCESS's February 11, 2020 cruise to Mexico spurred the state's initial stay-at-home orders. *See* Placer County Announces Death of Patient
26  with COVID-19, March 4, 2020, https://www.placer.ca.gov/6438/Death-of-patient-with-COVID-19 (last visited May 19, 2020); Bill Chapel, *Coronavirus Deaths in*
27  *Washington and California, Where Gov. Declares Emergency*, NPR, March 4, 2020, https://www.npr.org/sections/health-
28  shots/2020/03/04/812121540/coronavirus-los-angeles-declares-emergency-and-u-s-reports-80-cases-in-13-states (last visited May 19, 2020).

CLASS ACTION COMPLAINT FOR DAMAGES

52.     On March 4, 2020, Defendants alerted passengers who had embarked upon the M/V GRAND PRINCESS on February 21, 2020, immediately following Plaintiff's voyage, about a "small cluster of COVID-19 cases in Northern California" related to Plaintiff's Mexico-bound trip aboard the ship. Upon information and believe, Defendants knew at that time that M/V GRAND PRINCESS passengers on the February 21, 2020, voyage were currently suffering from COVID-19 and that there potentially an outbreak.

53.     Spurred by information regarding conditions onboard the M/V GRAND PRINCESS during its Hawaii voyage, and by the death of a passenger who had been onboard the ship during Plaintiff's Mexico-bound trip, Governor Gavin Newsom declared a state of emergency on March 4, 2020, to manage the COVID-19 outbreak in California. As a result, the State of California refused to allow the vessel into port in San Francisco, forcing the vessel to anchor off the city's coast. Governor Newsom stated at a press conference that there were 11 passengers and 10 crew members experiencing symptoms.

54.     On or about Thursday, March 5, 2020, two weeks after the M/V GRAND PRINCESS sailed for Hawaii, Defendants instituted some changes in their operation of the vessel, including cabin/state room quarantine, meal service within the cabins/state rooms, and cessation of daily turndown service and communal activities. Defendants had never instituted these protocols during Plaintiffs' trip, despite knowing about the potential for contagion aboard the cruise ship, and despite becoming aware, while the ship was still at sea, that at least one passenger was suffering from COVID-19.

55.     On or around March 6, 2020—two weeks after Plaintiffs disembarked from their trip, and even longer after Defendants became aware a passenger was suffering from COVID-19 symptoms onboard—Plaintiff Connie Simmons received a letter from Defendants alerting her that she may have been exposed to COVID-19 while onboard the M/V GRAND PRINCESS. On information and belief, other

CLASS ACTION COMPLAINT FOR DAMAGES

1    passengers from the instant voyage received similar correspondence from
2    Defendants.

3        56.    At the time of this filing, Defendant CARNIVAL has cancelled future
4    cruises embarking from San Francisco through the end of 2020.  However,
5    CARNIVAL's website indicates that it intends to begin operating certain cruise
6    ships as early as August 1, 2020, potentially posing grave threats to their
7    passengers, crew members, and the public health.[12]

8        57.    If Plaintiffs had known the serious and actual risks of contracting or
9    spreading COVID-19 while onboard the M/V GRAND PRINCESS, Plaintiffs
10   would not have sailed on the February 11, 2020, roundtrip voyage to Mexico. Or, at
11   minimum, if they had been made aware after embarkation of the growing and
12   continued risk, they would have disembarked from the ship at one of its ports of
13   call.

14       58.    As a direct and proximate result of Defendants' acts and omissions,
15   Plaintiffs Connie Simmons, James Simmons, Duc Chung, and Dwight Everett
16   became ill with COVID-19, and suffered from various symptoms, including loss of
17   appetite, coughing, sore throat, and blood clots. Plaintiffs Connie Simmons, Duc
18   Chung, and James Simmons were forced to miss multiple days of work.

19       59.    As a direct and proximate result of the negligence and gross
20   negligence of Defendants in exposing Plaintiffs and Class Members to actual risk of
21   immediate physical injury, Plaintiffs and Class Members have suffered injuries and
22   emotional distress of the nature and type that reasonable persons would suffer under
23   the circumstances alleged in this Complaint, including, but not limited to, suffering
24   anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and
25   shame.

26       60.    Furthermore, as public health experts and physicians learn more about
27   the myriad ways COVID-19 attacks and damages the body, Plaintiffs and Class

28   _____
     [12] *See* Carnival, Health and Safety Updates, https://www.carnival.com/health-and-
     sailing-updates (last visited May 31, 2020).

     CLASS ACTION COMPLAINT FOR DAMAGES

Members develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams. Plaintiffs and the Class Members are suffering and will continue to suffer due to the ever-present fear and anxiety that they will or may later experience negative health outcomes or complications as a direct and proximate result of being exposed to, and potentially contracting, COVID-19 because of Defendants' negligent and grossly negligent acts and omissions.

61.   Plaintiffs Duc Chung, Connie Simmons, and James Simmons experienced a range of symptoms that manifest their exposure to and contraction of COVID-19. Furthermore, it is expected that, as a result of Defendants' negligence and gross negligence, these Plaintiffs and the Class will continue to suffer and will, in the future, require medical services to monitor for as yet unidentified symptoms or negative health outcomes related to COVID-19.

## NOTICE

62.   Section 16(A)(i) of the Passage Contract purports to require that claimants provide notice to PRINCESS and CARNIVAL of any potential claims. Although Plaintiffs do not concede that this provision is enforceable, Plaintiffs and Class Members have complied with this requirement by providing written notice to Defendants' electronically on April 27, 2020, and May 21, 2020.

## CLASS ACTION ALLEGATIONS

63.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all similarly-situated persons pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1), (b)(2), (b)(3), and/or (c)(4). This action satisfies the applicable numerosity, commonality, typicality, adequacy, predominance, and/or superiority requirements of those provisions.

64.   The proposed Class is defined as follows:  All persons in the United States, who sailed as passengers on the M/V GRAND PRINCESS cruise from San Francisco, California, leaving on February 11, 2020, roundtrip to Mexico.

CLASS ACTION COMPLAINT FOR DAMAGES

65.     Excluded from the proposed Class are: (1) CARNIVAL and PRINCESS, any entity or division in which either have a controlling interest, and its legal representatives, officers, directors, assigns and successors; (2) the judicial officer(s) to whom this case is assigned and the judicial officer(s)' immediate family and legal staff; and (3) governmental entities. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, otherwise divided into subclasses, or modified in any other way.

66.     The individual Plaintiffs named in this complaint support the use of the class action mechanism to achieve economy, efficiency, fairness, and consistency of result by determining the important common questions raised in this action on a common basis.

**A.     <u>Numerosity</u>**

67.     There were, on information and belief, approximately 2,422 passengers on the M/V GRAND PRINCESS for the cruise that is the subject of this action. Their exact number and identities can be readily ascertained from Defendants' records. The individual joinder of all passengers is impractical, and the class action procedure is more practical, cost-effective, inclusive, and efficient than multiple lawsuits on the common questions of law and fact that unite the class, or piecemeal and incomplete individual joinder. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Health and Human Services.

**B.     <u>Typicality</u>**

68.     The claims of Plaintiffs are typical of the claims of Class Members in that Plaintiffs, like all Class Members, sailed on the leg of the M/V GRAND PRINCESS cruise that began on February 11, 2020 and returned on February 21,

2020. Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they sailed on a cruise they would not have sailed on and suffered significant injury, emotional distress and economic damage caused by the negligence of the Defendants. The factual bases of CARNIVAL and PRINCESS's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

**C.** **Adequate Representation**

69.    Plaintiffs DUC CHUNG, BERNETTA EVERETT, DWIGHT EVERETT, CONNIE SIMMONS, JAMES SIMMONS and MICHAEL SIMMONS will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs DUC CHUNG, BERNETTA EVERETT, DWIGHT EVERETT, CONNIE SIMMONS, JAMES SIMMONS and MICHAEL SIMMONS have retained counsel with substantial experience in prosecuting class actions, aggregate suits, and mass torts.

70.    Plaintiffs DUC CHUNG, BERNETTA EVERETT, DWIGHT EVERETT, CONNIE SIMMONS, JAMES SIMMONS, and MICHAEL SIMMONS, and their counsel are committed to vigorously prosecuting this action on behalf of all Class Members, and have the financial resources to do so. Neither Plaintiffs DUC CHUNG, BERNETTA EVERETT, DWIGHT EVERETT, CONNIE SIMMONS, JAMES SIMMONS, and MICHAEL SIMMONS, nor their counsel have interests adverse to those of the Class Members.

**D.** **Predominance of Common Issues**

71.    There are numerous questions of law and fact, including those related to Defendants' knowledge, conduct, and duty throughout the events described in this Complaint, common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include, *inter alia*:

CLASS ACTION COMPLAINT FOR DAMAGES

1          a.        what Defendants knew about the presence and risks associated
2    with the COVID-19 virus, and contagions generally, and when they knew it;
3          b.        whether Defendants should have canceled the subject cruise to
4    avoid exposing passengers to a deadly pathogen and/or taken other steps to avoid
5    exposing passengers to a deadly pathogen;
6          c.        whether, in light of the widespread knowledge of COVID-19
7    and Defendants' knowledge of the risk of contagion aboard cruise ships,
8    Defendants had a duty to conduct medical screenings of passengers prior to
9    boarding Plaintiffs and others onto the M/V GRAND PRINCESS on February 11,
10   2020;
11         d.        whether Defendants had a duty to decontaminate the M/V
12   GRAND PRINCESS after they knew or should have known that individuals aboard
13   the M/V GRAND PRINCESS prior to the subject cruise were or were potentially
14   carriers of the COVID-19 virus;
15         e.        whether Defendants had a duty to disclose to passengers
16   onboard the M/V GRAND PRINCESS that at least one person onboard the vessel
17   was experiencing symptoms of COVID-19, and the related risks that Plaintiffs
18   could contract and /or spread the virus;
19         f.        whether Defendants had a duty to institute social distancing or
20   quarantine protocols on the ship when they became aware that at least one
21   passenger onboard was suffering from COVID-19 symptoms;
22         g.        whether Defendants failed to disclose, during the vessel's trip or
23   in the days immediately following, that passengers and crew aboard the M/V
24   GRAND PRINCESS between February 11, 2020, and February 21, 2020, were or
25   were potentially carriers of the COVID-19 virus and other relevant information;
26         h.        interpretation of the applicable contract documents and the
27   associated "Passenger Bill of Rights" incorporated therein;
28

CLASS ACTION COMPLAINT FOR DAMAGES

1             i.      whether Defendants acted as alter egos and/or agents, such that

2   they should be held jointly liable for the conduct alleged herein;

3             j.      whether CARNIVAL is liable for the acts, omissions, and

4   violations described in this Complaint;

5             k.      whether PRINCESS is liable for the acts, omissions, and

6   violations described in this Complaint; and

7             l.      whether the conduct of any or all of the defendants warrants the

8   imposition of punitive damages to vindicate the societal interest in punishment and

9   deterrence.

10         **E.**      **Superiority**

11        72.    Plaintiffs and Class Members have all suffered and will continue to

12   suffer harm and damages as a result of CARNIVAL's and PRINCESS's unlawful

13   and wrongful conduct. A class action is superior to other available methods for the

14   fair and efficient adjudication of this controversy.

15        73.    Absent a class action, most Class Members would likely find the cost

16   of litigating their claims prohibitively high and would therefore have no effective

17   remedy at law. Because of the relatively small size of the individual Class

18   Members' claims (compared to the cost of litigation), it is likely that only a few

19   Class Members could afford to seek legal redress for Defendants' misconduct.

20   Absent a class action, Class Members will continue to incur damages, and

21   Defendants' misconduct will continue without remedy.

22        74.    Class treatment of common questions of law and fact is superior to

23   other available procedures, such as multiple individual actions or piecemeal

24   litigation because class treatment will conserve the resources of the courts and the

25   litigants, and will promote consistency and efficiency of adjudication.

26         **F.**      **Limited Fund**

27        75.    In an abundance of caution, Plaintiffs take note of the presently

28   apparent financial circumstances of CARNIVAL and/or PRINCESS to allege the

CLASS ACTION COMPLAINT FOR DAMAGES

1    possibility that their assets and resources available to fairly compensate Plaintiffs

2    and Class Members, to satisfy appropriate punitive damages awards, and/or

3    otherwise fairly address the claims against them may constitute a "limited fund"

4    within the meaning of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), such that

5    class certification under Rule 23(b)(1)(B) is necessary and appropriate as a matter

6    of due process and equity.

7              **G.**    **Mass Action**

8        76.    In the alternative, this matter should proceed as a mass action, as

9    defined in 28 U.S.C. § 1332 (d)(11)(B)(i) and should be tried jointly on the ground

10   that plaintiffs' claims involve common questions of law or fact, including as set

11   forth above.

12       77.    Plaintiffs' individual claims exceed the required jurisdictional amount

13   of $75,000.00.

14                        **CLAIMS FOR RELIEF**

15                     **FIRST CAUSE OF ACTION**
                  **NEGLIGENCE AGAINST ALL DEFENDANTS**
16

17       78.    Plaintiffs re-allege all allegations in all preceding paragraphs as if

18   alleged fully herein.

19       79.    Defendants owed Plaintiffs, and the Class, who were passengers who

20   boarded the M/V GRAND PRINCESS on February 11, 2020, a duty to ensure that

21   they would not be exposed to an unreasonable risk of harm.

22       80.    Likewise, Defendants owed Plaintiffs and the Class a duty to take

23   actions to prevent and mitigate the risk of threats to passengers' health and safety,

24   including by ensuring that the M/V GRAND PRINCESS was properly cleaned,

25   disinfected, and safely maintained before and during the voyage.

26       81.    Defendants knew or should have known that cruise ships pose an

27   especially severe risk of viral outbreak. Defendants knew or should have known

28   that cruise ships owned and operated by Defendants had been the sites of prior,

     lethal outbreaks of COVID-19, and should have been aware of new guidelines for

the cruise industry published by Dr. Hadjichristoulou and a team of European experts on February 3, 2020. In particular, Defendants had knowledge of the actual risks facing passengers based on the outbreak of the virus on the M/V Diamond Princess a mere three weeks prior to the instant outbreak.

82.     Defendants knew or should have known that passengers boarding the M/V GRAND PRINCESS could be carriers of COVID-19, and that crew members aboard the M/V GRAND PRINCESS were or could have been exposed to COVID-19 and were or could have been carriers of the virus, but did not institute any screening procedures prior to the February 11, 2020, embarkation of the M/V Grand Princess.

83.     Defendants failed to do what a reasonably careful cruise ship owner and operator would do under the circumstances.

84.     Defendants breached their duty to Plaintiffs and the Class when, with the aforementioned knowledge, Defendants nevertheless chose to embark on the San Francisco-Mexico voyage.

85.     Defendants also breached their duties when, with that same knowledge, they chose not to screen or medically examine any passengers or crew members, or prevent those infected with the virus from boarding the ship, prior to embarkation on February 11, 2020, or throughout the cruise at any ports of call after passengers had left and returned to the ship.

86.     Additionally, Defendants breached their duties to Plaintiffs and the Class when Defendants repeatedly failed to notify passengers aboard the M/V GRAND PRINCESS during the instant voyage that passengers traveling alongside them were suffering from COVID-19 symptoms.

87.     If Defendants had adequately informed Plaintiffs and the Class prior to boarding, or at any other time, of the relevant information in Defendants' possession, including facts regarding Defendants' lack of adequate disinfecting procedures on the M/V GRAND PRINCESS, lack of adequate quarantining

procedures, and the actual risk of exposure to COVID-19, Plaintiffs and the Class could have made informed decisions about their health and their families' health, including disembarking from or not boarding the vessel.

88.   Defendants repeatedly breached their duties to Plaintiffs and the Class when, throughout the San Francisco-Mexico voyage, with the aforementioned knowledge, they repeatedly chose not to inform Plaintiffs of the continuing and growing risks of contracting COVID-19, and chose not to provide Plaintiffs with the informed option to disembark at one of the vessel's ports of call.

89.   Finally, Defendants continued to breach their duties to Plaintiffs and the Class when, after learning that at least one passenger onboard was suffering from COVID-19 symptoms, they, *inter alia*:  chose not to warn Plaintiffs' and the Class of the potential for infection; failed to implement quarantine or social distancing protocols; chose to continue operating large, public gatherings and meals; chose to continue to operate daily turndown service; and chose to continue hosting communal activities.

90.   As a direct and proximate result of Defendants' failure to safeguard Plaintiffs and the Class, Plaintiffs and the Class were at actual risk of immediate physical injury.

91.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff CONNIE SIMMONS has suffered weeks of illness, including a cough, shortness of breath, and blood clots, and she was forced to stop working for over five weeks.

92.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff DUC CHUNG suffered from a fever, cough, sore throat, and other symptoms that required him to self-quarantine and miss multiple days of work.

93.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff JAMES SIMMONS suffered from sore throat, fever, chills, and a cough that caused him to miss multiple days of work.

CLASS ACTION COMPLAINT FOR DAMAGES

94.     As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff Dwight Everett contracted COVID-19, and was ill for approximately 5 days while onboard the M/V GRAND PRINCESS.

95.     As a direct and proximate result of the aforementioned negligence of Defendants in exposing them to actual risk of immediate physical injury, Plaintiffs and the Class have suffered physical injury, emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized by the fear of developing COVID-19. It is expected that they will continue to suffer and will, in the future, require medical services not of a kind generally anticipated as part of the effects of daily life.

**SECOND CAUSE OF ACTION**
**GROSS NEGLIGENCE AGAINST ALL DEFENDANTS**

96.     Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

97.     Defendants owed duties to Plaintiffs and the Class to:  safeguard against and mitigate the risks of passenger injury and illness; appropriately disinfect and sanitize the M/V GRAND PRINCESS, in light of the circumstances of a global pandemic; notify Plaintiffs and the Class of the actual and especially high risk of contracting COVID-19 aboard the M/V GRAND PRINCESS; disembark passengers and crew members who had likely come into contact with individuals infected with COVID-19;and implement medical screening and examination protocols for crew and passengers.

98.     Defendants knew of the unreasonably high risk of viral contagion of COVID-19 on cruise ships, and Defendants knew that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19 in light of the prior situation on the Diamond Princess off the coast of Japan.

CLASS ACTION COMPLAINT FOR DAMAGES

99.   Defendants' conduct in deciding to continue to operate the M/V GRAND PRINCESS with Plaintiffs and the Class aboard, even with the aforementioned knowledge, demonstrates an intentional failure to do what a reasonably careful cruise ship owner and operator would do under the circumstances, exhibits a willful and conscious disregard for the safety of Plaintiffs and the Class, and evidences recklessness and indifference by Defendants, which constitutes gross negligence.

100.   Defendants' failure to abide by the guidelines issued on February 3, 2020, by not disembarking, quarantining or otherwise sheltering in their cabins the passengers and crew members known to have come into contact with the passenger suffering from COVID-19 symptoms onboard the instant cruise demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and operator would do.

101.   Defendants' choice not to warn Plaintiffs and the Class of their actual risk of harm in being exposed to COVID-19 after learning about a passenger onboard who came down with symptoms (and later died) constitutes a failure to provide even a modicum of care to Plaintiffs and the Class. The continued and repeated choice not to provide passengers with notice of the actual risks facing them demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and/or operator would do.

102.   Moreover, Defendants' behavior demonstrated a willful and conscious disregard for the rights and safety of others, and an extreme departure of what a reasonably careful cruise ship owner and/or operator would do in their continued and repeated choices to:  not effectively sanitize and disinfect the M/V GRAND PRINCESS during the San Francisco-Mexico voyage; not institute medical screening and examinations for passengers and crew members; host large social

gatherings and meals; conduct daily turn-down service; and not implement quarantine or social distance protocols at any point during the voyage. These decisions manifest Defendants' utter failure to provide even a modicum of care to Plaintiffs and the Class.

103.   Defendants chose to place profits over people, including the safety of their passengers, crew, and the general public in continuing to operate business as usual, despite their knowledge of the actual—potentially lethal—risk to Plaintiffs and the Class.

104.   As a direct and proximate result of Defendants' conduct, Plaintiffs were placed at actual, continual risk of immediate, and potentially fatal, physical injury.

105.   Indeed, as a direct and proximate result of Defendants' breach of their duties of care, Plaintiff CONNIE SIMMONS has suffered weeks of illness, including cough, shortness of breath, and blood clots, and she was forced to stop working for over five weeks.

106.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff DUC CHUNG suffered from a fever, cough, sore throat, and other symptoms that required him to self-quarantine and miss multiple days of work.

107.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff JAMES SIMMONS suffered from sore throat, fever, chills, and a cough that caused him to miss multiple days of work.

108.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff DWIGHT EVERETT contracted COVID-19, and was ill for approximately 5 days while onboard the M/V GRAND PRINCESS.

109.   Finally, as a direct and proximate result of Defendants' gross negligence in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this

CLASS ACTION COMPLAINT FOR DAMAGES

Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized by the fear of developing COVID-19. It is expected that they will continue to suffer and will, in the future, require medical services not of a kind generally accepted as a typical part of daily life.

**THIRD CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

110.   Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

111.   Defendants knew or should have known of the actual risk of viral contagion of COVID-19 aboard cruise ships, and, in light of the situation on the Diamond Princess only 3 weeks prior to the instant voyage on the M/V GRAND PRINCESS, Defendants knew or should have known that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19.

112.   Even in light of this information, however, Defendants failed to implement any effective screening or medical examination procedures for passengers boarding the ship prior to the voyage.

113.   Defendants also knew or should have known that at least one passenger traveling on the instant trip aboard the M/V GRAND PRINCESS was experiencing symptoms of COVID-19 (that passenger eventually tested positive for COVID-19).

114.   Nevertheless, Defendants continually and repeatedly:  failed to take any effective actions to prevent or mitigate the spread of COVID-19; failed to alert passengers to the possibility of infection aboard the ship; hosted and encouraged participation in large group activities and events that Defendants knew could lead to large-scale infection among the crew and passengers.

115.   These choices by Defendants created a dangerous and threatening environment in which Plaintiffs and the Class were forced to live for almost two

1    weeks, at all times directly at risk of becoming infected with, made ill by, and/or
2    spreading COVID-19.
3         116.   As the direct and proximate result of Defendants' actions and
4    omissions throughout the duration of their voyage aboard the M/V GRAND
5    PRINCESS, Plaintiffs and members of the Class were in the "zone of danger,"
6    where they were at immediate risk of actual physical harm, including the potential
7    of contracting COVID-19, suffering from the illness—including experiencing
8    shortness of breath, coughing, body aches, fever, and/or any number of yet-to-be-
9    identified future ailments, such as liver damage, kidney failure, or blood clotting—
10   and potentially death as a result of the virus.
11        117.   Plaintiffs and members of the Class experienced severe psychic
12   injuries, of the nature and type that reasonable persons would suffer under the
13   circumstances alleged in this Complaint, when they were forced to watch first hand
14   as their friends and family members became ill with COVID-19, feared for their
15   own safety and well-being, and continue to fear that they may begin exhibiting
16   symptoms or health complications not yet identified as a result of COVID-19.
17   Plaintiffs suffered physical and emotional injury as the direct and proximate result
18   of Defendants' misconduct.
19        118.   As a direct and proximate result of Defendants' extreme departure
20   from the ordinary standard of care and their failure to meet their duties of care to
21   Plaintiffs and the Class by providing even scant care, Plaintiff CONNIE
22   SIMMONS has suffered weeks of illness, including cough, shortness of breath, and
23   blood clots, and she was forced to stop working for over five weeks.
24        119.   As a direct and proximate result of Defendants' breach of their duties
25   of care, Plaintiff DUC CHUNG suffered from a fever, cough, sore throat, and other
26   symptoms that required him to self-quarantine and miss multiple days of work.
27        120.   Plaintiff JAMES SIMMONS suffered from sore throat, fever, chills,
28   and a cough that caused him to miss multiple days of work.

CLASS ACTION COMPLAINT FOR DAMAGES

121.  As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff DWIGHT EVERETT contracted COVID-19, and was ill for approximately 5 days while onboard the M/V GRAND PRINCESS.

122.  Finally, as a direct and proximate result of Defendants' gross negligence in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame related to their own risk of contracting COVID-19 and the suffering they witnessed among their fellow passengers who contracted COVID-19. Plaintiffs and members of the class were traumatized by the fear of their family members, friends and fellow passengers developing COVID-19 and by the threat to their own health of becoming infected with the virus or suffering future negative health outcomes or complications related to exposure to and / or contraction of the virus.

123.  Plaintiffs and Class members were endangered and harmed by Defendants' actions when they were forced to travel on an infested vessel without appropriate information about the risks facing them. It is expected that Plaintiffs and the Class will continue to suffer and will, in the future, require medical services not of a kind generally anticipated as a typical part of daily life.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

124.  Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

125.  Defendants knew or should have known of the actual risk of viral contagion of COVID-19 aboard cruise ships, and, based on their experience with COVID-19 outbreak aboard the Diamond Princess only 3 weeks prior to the instant voyage on the M/V GRAND PRINCESS, Defendants knew or should have known

- 27 -

1    that it was especially dangerous to expose Plaintiffs and the rest of the Class to
2    COVID-19.

3         126.   By or before the time of boarding passengers onto the M/V GRAND
4    PRINCESS, on February 11, 2020, Defendants knew or should have known of the
5    extreme risks to health and safety—including the possibility of death—presented by
6    COVID-19.

7         127.   In light of this knowledge and experience, and particularly given that
8    cruise ships present an especially heightened risk of contagion, Defendants
9    exhibited extreme and outrageous conduct when, *inter alia*, Defendants boarded
10   Plaintiffs and the Class onto the M/V GRAND PRINCESS on February 11, 2020,
11   without taking any effective measures to medically screen or examine passengers
12   for COVID-19 symptoms.

13        128.   Defendants also knew or should have known during the instant trip
14   that at least one passenger aboard the M/V GRAND PRINCESS was experiencing
15   symptoms of COVID-19.

16        129.   Defendants additionally acted extremely and outrageously when they
17   chose not to effectively clean, sanitize, sterilize, or disinfect the M/V GRAND
18   PRINCESS during the instant trip.

19        130.   Defendants exhibited repeated and continued extreme and outrageous
20   conduct when Defendants failed to: alert Plaintiffs to the fact that at least one
21   passenger on the trip was experiencing COVID-19 symptoms and had come into
22   contact with passengers and crew members; notify Plaintiffs and the Class about the
23   actual and potential threat of exposure to, infection of, and the possibility of
24   spreading COVID-19 aboard the ship; failed to advise Plaintiffs and the Class about
25   the possibility and health benefits of disembarking during the trip, at one of the
26   vessel's ports of call.

27        131.   Defendants continued to behave extremely and outrageously when,
28   after learning about the ill passenger, they:  encouraged Plaintiffs and the Class to

CLASS ACTION COMPLAINT FOR DAMAGES

1    continue mingling and participating in large group events and functions throughout

2    the duration of the trip; continued to provide turn down service to passengers

3    despite the fact that crew members had likely been exposed to COVID-19; and

4    failed to institute any policies for quarantine, isolation, or social distancing for

5    passengers.

6         132.   As a direct and proximate result of Defendants' intentional and

7    reckless behavior and omissions, Plaintiffs and the Class suffered severe emotional

8    distress and physical harm.

9         133.   Plaintiffs and the Class were forced to watch as their friends and

10   family members became ill with COVID-19, and, all the while, fear for their own

11   safety and well-being. Plaintiffs suffered physical and emotional injury as the direct

12   and proximate result of Defendants' misconduct, and Plaintiffs continue to suffer

13   from fear and anxiety that they may still begin exhibiting symptoms or experience

14   as-yet-unidentified complications due to their exposure to and potential contraction

15   of COVID-19 while aboard the M/V GRAND PRINCESS.

16        134.   As a direct and proximate result of Defendants' extreme departure

17   from the ordinary standard of care and their failure to meet their duties of care to

18   Plaintiffs and the Class by providing even scant care,

19        135.   As a direct and proximate result of Defendants' breach of their duties

20   of care, Plaintiff CONNIE SIMMONS has suffered weeks of illness, including

21   cough, shortness of breath, and blood clots, and she was forced to stop working for

22   over five weeks.

23        136.   As a direct and proximate result of Defendants' breach of their duties

24   of care, Plaintiff DUC CHUNG suffered from a fever, cough, sore throat, and other

25   symptoms that required him to self-quarantine and miss multiple days of work.

26        137.   Plaintiff JAMES SIMMONS suffered from sore throat, fever, chills,

27   and a cough that caused him to miss multiple of work.

28

CLASS ACTION COMPLAINT FOR DAMAGES

138.   As a direct and proximate result of Defendants' breach of their duties of care, Plaintiff DWIGHT EVERETT contracted COVID-19 and was ill for approximately 5 days while onboard the M/V GRAND PRINCESS.

139.   Finally, as a direct and proximate result of Defendants' behavior, which exposed Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame related to their own risk of contracting COVID-19 and the suffering they witnessed among their fellow passengers who contracted COVID-19. Plaintiffs and members of the class were traumatized by the fear of their family members, friends and fellow passengers developing COVID-19 and by the past and ongoing threat to their own health of becoming infected with the virus and potentially suffering from as-yet-unidentified negative health outcomes and complications.

140.   Plaintiffs and Class members were endangered and harmed by Defendants' actions when they were forced to travel on an infected vessel without appropriate information about the risks facing them. It is expected that Plaintiffs and the Class will continue to suffer and will, in the future, require medical services not of a kind generally accepted as part of the wear and tear of daily life.

141.   Throughout the events described in this Complaint, Defendants repeatedly acted with conscious, callous, and/or reckless disregard for the rights, interests, health and safety of their passengers, such that the imposition of punitive damages, under CA Civil Code Section 3294 and/or all other applicable law, is necessary and appropriate to punish them for their course of conduct, and to deter them and others, and protect the public, from the consequences of similar conduct.

CLASS ACTION COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and all others similarly situated, pray for judgment against Defendants, and each of them, as follows:

1.      An order certifying the proposed Class pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(1), (b)(2), (b)(3) and/or (c)(4), designating Plaintiffs DUC CHUNG, BERNETTA EVERETT, DWIGHT EVERETT, CONNIE SIMMONS, JAMES SIMMONS and MICHAEL SIMMONS as named representatives of the Class and designating the undersigned as Class Counsel;

2.      An award of damages totaling in excess of Five Million Dollars ($5,000,000.00), inclusive of compensatory damages for Plaintiffs' injuries, including emotional pain and suffering and any other damages allowed by law, in an amount to be proven at trial;

3.      An award of the costs of Plaintiffs' and the Class's ongoing medical monitoring and diagnostic examinations required to diagnose, prevent, and/or treat current or future injury related to Plaintiffs' and Class Members' exposure to and potential contraction of COVID-19, in light of the evolving scientific understanding of the full risk and scope of health outcomes of the virus;

An injunction requiring Defendants to: disclose to future passengers the nature and rate of risk of communicable disease upon their cruise ships; implement disinfecting and sanitizing procedures on each of their ships in between and during voyages; implement appropriate social distancing and physical distancing protocols to avoid or reduce the transmission of communicable pathogens; disembark and quarantine passengers when Defendants become aware of a heightened risk of communicable disease aboard a ship; and canceling or discontinuing the operation of cruises when Defendants know or should have known of a potential deadly pathogen or similar aboard their ships.

4.      An injunction requiring Defendants to: disclose to future passengers the nature and rate of risk of communicable disease upon their cruise ships; implement

CLASS ACTION COMPLAINT FOR DAMAGES

1    disinfecting and sanitizing procedures on each of their ships in between and during

2    voyages; implement appropriate social distancing and physical distancing protocols to

3    avoid or reduce the transmission of communicable pathogens; disembark and

4    quarantine passengers when Defendants become aware of a heightened risk of

5    communicable disease aboard a ship; and canceling or discontinuing the operation of

6    cruises when Defendants know or should have known of a potential deadly pathogen

7    or similar aboard their ships.

8         5.     An award of attorneys' fees and costs, as allowed by law;

9         6.     An award of pre-judgment and post-judgment interest, as provided by

10   law;

11        7.     Leave to amend this Complaint to conform to the evidence produced at

12   trial; and

13        8.     For such other and further relief as the Court deems just and proper.

14                        **<u>DEMAND FOR JURY TRIAL</u>**

15        Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal

16   Rules of Civil Procedure.

17

18                               Respectfully submitted,

19   Dated:    June 4, 2020           NELSON & FRAENKEL LLP

20

21                               By:  */s/ Gretchen M. Nelson*

22                               Gretchen M. Nelson (112566)
                                 gnelson@nflawfirm.com
23                               Carlos F. Llinás Negret (284746)
                                 cllinas@nflawfirm.com
24                               601 So. Figueroa Street, Suite 2050
                                 Los Angeles, CA 90017
25                               Telephone:  213-622-6469
                                 Facsimile:  213-622-6019

26

27

28

- 32 -                         CLASS ACTION COMPLAINT FOR DAMAGES

1
2

Dated:     June 4, 2020          MARY ALEXANDER & ASSOCIATES, P.C.

3

4                                          By:   */s/ Mary E. Alexander*

5                                          Mary E. Alexander, Esq. (SBN 104173)
                                           *malexander@maryalexanderlaw.com*
6                                          Brendan D.S. Way, Esq. (SBN 261705)
                                           *bway@maryalexanderlaw.com*
7                                          44 Montgomery Street, Suite 1303
                                           San Francisco, California 94104
8                                          Telephone: (415) 433-4440
                                           Facsimile: (415) 433-5440
9

10   Dated:     June 4, 2020          LIEFF CABRASER HEIMANN &
                                           BERNSTEIN, LLP
11

12                                         By:   */s/ Elizabeth J. Cabraser*

13                                         Elizabeth J. Cabraser (SBN 083151)
                                           *ecabraser@lchb.com*
14                                         Jonathan D. Selbin (SBN 170222)
                                           *jselbin@lchb.com*
15                                         275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
16                                         Telephone: (415) 956-1000
                                           Facsimile: (415) 956-1008
17

18                                         LIEFF CABRASER HEIMANN &
                                           BERNSTEIN, LLP
19                                         Mark P. Chalos (*Pro Hac Vice* forthcoming)
                                           *mchalos@lchb.com*
20                                         222 2nd Avenue South, Suite 1640
                                           Nashville, TN 37201
21                                         Telephone: (615) 313-9000
                                           Facsimile: (212) 313-9965
22

23                                         *Attorneys for Plaintiffs*

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES